COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chafin and Senior Judge Clements
Argued at Richmond, Virginia

**PUBLISHED**

WAYNE ANTONIO BLAND, JR.

OPINION BY
JUDGE TERESA M. CHAFIN
JUNE 7, 2016

v.        Record No. 0864-15-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge

Dorian Dalton, Senior Assistant Public Defender, for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Wayne Antonio Bland, Jr. ("appellant"), was indicted by a grand jury in the City of

Richmond for the possession of a firearm after having been convicted of a felony pursuant to Code

§ 18.2-308.2.  Prior to trial, appellant filed a motion to suppress the evidence obtained during his

encounter with law enforcement.  The trial court denied the motion.  Following a bench trial,

appellant was convicted and sentenced to five years of imprisonment.  Appellant now appeals to this

Court, contending that the trial court erred in denying his motion to suppress.

Background

On appellate review, we consider the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all

inferences fairly deducible from the evidence."  Riner v. Commonwealth, 268 Va. 296, 303, 601

S.E.2d 555, 558 (2004).  On June 20, 2014, at 6:08 p.m., the Department of Emergency

Communications ("DEC") of the Richmond Police Department received a report of a crime.  The

caller identified "an armed party near the intersection of Coalter and Redd Street" in Richmond.

The caller provided a description of the individual as an African-American male "with a tan hat, orange and white striped shirt, and tan cargo shorts." The caller stated that the subject was brandishing a gun in that location. The DEC dispatcher relayed the location and description of the subject to Richmond police officers Stephen Butler and Ronald May, informing them that the subject had been seen waving a gun.

Approximately two minutes later, the officers arrived at the location. While they did not see anyone at the intersection of Coalter and Redd Streets, they saw an individual who matched the description walking on the left-hand side of Redd Street, near its intersection with Coalter. This individual was subsequently identified as appellant. Appellant's appearance was consistent with the description the caller provided – an African-American male wearing tan cargo shorts, an orange and white striped shirt, and a tan hat.

The officers stopped their car and walked approximately thirty feet to appellant's location. Appellant "looked in [their] direction" then "patted his front right pocket, his right rear pocket, and then pulled [his] shirt down . . . on [the right] side." Officer Butler understood this action as being consistent with the type of movements in which one conducting a "weapons check" would engage. Butler characterized a "weapons check" as the efforts of an armed person "to make sure [their weapon] is still there."

As the officers approached appellant, Officer May informed him of the call that police had received and the fact that appellant matched the provided description. May expressed his intention to "pat down" appellant, and as he began to do so, appellant "knocked [his] hand away and told [the officer he] could not do that." As May sought to pat appellant down a second time, appellant fled. Appellant was apprehended after a short run of roughly twenty feet. After a brief struggle, during which appellant resisted being handcuffed, the police took him into custody. The police recovered a .40 caliber Smith and Wesson handgun during a subsequent search of the

- 2 -

right back pocket of appellant's pants. At the suppression hearing, Butler confirmed this pocket was the same one he had witnessed appellant attempting to conceal with his shirt.

The trial court admitted the recording of the informant's call to the DEC over appellant's objection at the suppression hearing. The caller related that she was calling from "the field at Coalter and Accommodation Streets" in the City of Richmond. The caller noted that she was watching an individual "walking on Redd Street in an orange and white striped shirt, with tan cargo shorts on." She explained that she had first provided the description and the individual's present location because "she did not want him to get out of her eyesight." The caller then related that she witnessed this person "brandish a gun in front of a female" near a "field full of children," and then "enter into a house at 1947 Accommodation Street." She stated that the person was now on Redd Street, walking with the gun in his hand. She was then asked to give a description, which she once again provided – an African-American male, wearing an orange and white striped shirt, tan cargo shorts, and a tan hat. When asked if the gun was still in this individual's hand, the caller noted that the gun "was in his pocket," stating that he had pulled the gun from his pocket when he brandished it in front of the woman and children.

In support of his motion to suppress the firearm, appellant argued to the trial court that the tip provided to police was not sufficiently corroborated to render it reliable and capable of supporting the requisite reasonable suspicion to justify his seizure. In response, the Commonwealth, relying upon Navarette v. California, 134 S. Ct. 1683 (2014), stated that the caller's knowledge served to increase the tip's reliability. The Commonwealth argued that the caller's knowledge concerning appellant's possession of a firearm was corroborated by the activity witnessed by Officers Butler and May, wherein appellant patted his right front and rear pockets and pulled down the right side of his shirt as if to conceal his pockets. The Commonwealth indicated that appellant's actions in resisting both the pat down and handcuffing

afforded sufficient probable cause to place appellant under arrest, independently authorizing a search of his person.

In denying the suppression motion, the trial court made a factual finding, based upon having listened to the call, that the caller was an eyewitness to the events. The trial court cited both appellant's actions in patting his pockets as well as his resistance to the police as factors which, viewed in their totality, supported the search of appellant as constitutional.

Analysis

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, in this case the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*); see McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001). However, we review *de novo* the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure. Ornelas v. United States, 517 U.S. 690, 699 (1996). Our review of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13 (1996); see also Robinson v. Commonwealth, 273 Va. 26, 35-38, 639 S.E.2d 217, 222-24 (2007).

On appeal, appellant argues that "the anonymous tip did not provide reasonable articulable suspicion for the initial detention or the pat down search." He contends that the information provided by the caller lacked sufficient reliability and corroboration since the

- 4 -

officers were only able to corroborate that appellant was the person identified in the call.  Also appellant argues that "[t]he only additional behavior the officers observed prior to seizing [appellant] was him patting his pockets," which did not establish the requisite suspicion to support his seizure.

"Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a police officer 'may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" Beasley v. Commonwealth, 60 Va. App. 381, 395, 728 S.E.2d 499, 505 (2012) (quoting Bass v. Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000)).  "Although a mere 'hunch' does not create reasonable suspicion, Terry, 392 U.S. at 27, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause, United States v. Sokolow, 490 U.S. 1, 7 (1989)." Navarette, 134 S. Ct. at 1687.  In other words, "[a] 'reasonable suspicion' requires only 'some minimal level of objective justification' for making such a stop." Beasley, 60 Va. App. at 395, 728 S.E.2d at 505 (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)).

For a seizure to be reasonable, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts," justify the investigatory stop. Terry, 392 U.S. at 21.  However, in reviewing the reasonableness of an investigatory stop, "we are not limited to what the stopping officer says or to evidence of his subjective rationale, rather; we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." Raab v. Commonwealth, 50 Va. App. 577, 589 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (quoting United States v. Brown, 232 F.3d 589, 594 (7th Cir. 2000)).  An action can be reasonable "under the Fourth Amendment, regardless of the individual officer's state of

mind, as long as the circumstances, viewed objectively, justify [the] action." Id. (quoting Brigham City v. Stuart, 547 U.S. 398, 404 (2006)). Furthermore, reasonable suspicion is "based on an assessment of the totality of the circumstances." Beasley, 60 Va. App. at 395, 728 S.E.2d at 505 (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008)). In other words, law enforcement must look at the "whole picture." Navarette, 134 S. Ct. at 1687 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). Whether the totality of the circumstances, viewed objectively, justified a brief investigatory stop "is dependent upon both the content of information possessed by police and its degree of reliability." Id. (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

Reasonable suspicion can be based on an officer's personal observations or information supplied by another. See id. at 1688. However, "to provide reasonable suspicion, either the informant or information given must exhibit 'sufficient indicia of reliability.'" Giles v. Commonwealth, 32 Va. App. 519, 523, 529 S.E.2d 327, 329 (2000) (quoting White, 496 U.S. at 327). "[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." Navarette, 134 S. Ct. at 1688 (quoting White, 496 U.S. at 329). "But under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" Id. (quoting White, 496 U.S. at 327). "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting White, 496 U.S. at 330).

The reliability of an anonymous tip may be supported through the provision of "predictive information to bolster the tipster's basis of knowledge or credibility." Harris, 276 Va. at 695-96, 668 S.E.2d at 145 (citing Florida v. J.L., 529 U.S. 266, 271-72 (2000)). However, "[a]n anonymous tip need not include predictive information *when an informant reports readily*

*observable criminal actions*." Id. at 696, 668 S.E.2d at 146 (emphasis added) (citing Jackson, 267 Va. at 680, 594 S.E.2d at 603).

In Navarette, the United States Supreme Court determined that an officer had reasonable suspicion to stop a vehicle under suspicion of drunk driving after the officer received a tip that matched the description of a vehicle that a 911 caller had recently reported as running her off the road. 134 S. Ct. at 1686-87. Dispatch informed an officer of the call, gave him the license plate number of the truck, and told him that the truck would be a silver Ford F150 pickup and that it was in a certain area five minutes before. Id. The officer subsequently executed a traffic stop of the truck, and the driver was arrested for possession of marijuana. Id. at 1687. The Supreme Court held that the stop complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the truck's driver was intoxicated. Id. at 1686. The Court reasoned that the caller's accurate description of the truck, the timing of the call and the stop, and the caller's use of the 911 emergency system all lent to the tip's reliability. Id. at 1688-90.

Appellant's argument is based on the assumption that the caller's tip is unreliable without additional corroboration. He cites to White and J.L. in support of his argument. The facts of this case, however, are distinguishable from those in White and J.L.

In White, the tip was only a prediction of future criminal activity. In that case, an officer received a call from an anonymous person, stating that a woman would be leaving a certain apartment at a particular time in a brown Plymouth station wagon with the right taillight lens broken. The caller stated that the woman would be going to a certain motel and that she would be in possession of about an ounce of cocaine inside a brown attaché case. White, 496 U.S. at 327. The information provided by the caller in White failed to show the source of the caller's knowledge. The police were unable to determine reliability based on the caller's information

alone, without undertaking additional steps at corroboration. The officers were able to verify some aspects of the information which demonstrated that the caller had "a special familiarity with respondent's affairs," which implied that she had "access to reliable information about that individual's illegal activities." Id. at 332.

By comparison, in J.L., the Supreme Court held that an anonymous call, reporting that a young black male wearing a plaid shirt and standing at a bus stop was carrying a gun, did not justify an investigatory stop. 529 U.S. at 268. The caller could not be traced and identified, the call was not recorded, the caller did not state how he knew about the gun, and there were no other facts giving rise to reasonable suspicion. Id. The Supreme Court held that, without more, a tip cannot give rise to reasonable suspicion of criminal activity simply because the description of the suspect is accurate. Id. at 271-72 ("[R]easonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.").

Like the tip in Navarette, the information in the present case established numerous additional indicia of reliability. The caller provided contemporaneous eyewitness information to the DEC of the Richmond Police Department. She claimed to have seen appellant brandish a firearm at a woman, a criminal act, and was in the process of watching him walk down Redd Street while relaying the facts to the DEC. The caller first provided a description and present location of the suspect, explaining that "she did not want him to get out of her eyesight." Upon listening to the call, the trial court determined from the caller's description of events that the caller personally witnessed appellant's actions. By contrast, in White and J.L., the information failed to demonstrate the basis for the informant's knowledge. In this case, the caller's eyewitness knowledge of the events "lends significant support to the tip's reliability." Navarette, 134 S. Ct. at 1689.

Likewise, the evidence in this case established that only two minutes elapsed between the events observed and the call to the DEC. The caller stated that appellant had brandished the firearm, entered a home on Accommodation Street, and then left the residence to proceed up Redd Street. The officers encountered appellant approximately two minutes after the call in the reported Redd Street location. A report of this contemporaneous nature "has long been treated as especially reliable." Id.

The reliability of the information provided by the caller is additionally bolstered by the fact that the information was called in to the DEC. The Navarette Court held that technological advances have made 911 calls more trustworthy because the system can verify callers' information and geographically locate them. Id. at 1690. Because these technological advancements can reveal the identity of even an anonymous tipster subjecting them to punishment in the event of a false report of a crime, "a reasonable officer could conclude that a false tipster would think twice before using such a system." Id.

The Supreme Court noted in Navarette that "[a]lthough the indicia present here are different from those we found sufficient in White, there is more than one way to demonstrate 'a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 1692 (quoting Cortez, 449 U.S. at 417-18). The evidence in this case established a reliable eyewitness account of a readily observable crime as well as a precise eyewitness description of appellant's clothing, his location on Redd Street, and the location of the firearm he had brandished, noting it was placed in his pocket. The officers found appellant in the same location on Redd Street, dressed in the manner described by the caller, and patting his pocket in a manner consistent with a "weapons check."

The observations made by the officers combined with the information conveyed by the eyewitness informant not only provided the requisite suspicion to stop appellant, but also authorized the officers to frisk appellant's person for weapons.

As noted in Commonwealth v. Smith, 281 Va. 582, 709 S.E.2d 139 (2011):

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

281 Va. at 589-90, 709 S.E.2d at 142 (quoting Terry, 392 U.S. at 27).

## Conclusion

Given the knowledge that an individual matching appellant's description had been seen minutes before brandishing a weapon, which he then placed in his pocket, a reasonably prudent person in the officers' position could have believed appellant posed a risk to their safety, and thus was authorized to perform a frisk. The officers' belief was further supported by the inference that appellant performed a "weapons check" when he became aware of the officers' presence. Accordingly, the trial court did not err in rejecting the appellant's motion to suppress the evidence seized.

Affirmed.