UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia


DMITRI I. MEDVEDEV

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0930-16-2                     JUDGE MARLA GRAFF DECKER
                                                    JULY 18, 2017

HENRICO COUNTY


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Jeromy R. Lewis, Assistant Commonwealth's Attorney (Shannon L.
Taylor, Henrico County Commonwealth's Attorney, on brief), for
appellee.


        Dmitri I. Medvedev appeals his conviction for driving under the influence with a blood

alcohol concentration greater than 0.20% in violation of Henrico County Municipal Code § 22-2,

which adopts and incorporates Code §§ 18.2-266 and -270 by reference.  On appeal, he argues that

the circuit court erred by ruling that the seizure that led to his arrest was reasonable under the Fourth

Amendment of the United States Constitution.  We hold that the seizure was reasonable because the

evidence, viewed under the proper standard, proves that the encounter began as a consensual one

and that, by the time a seizure occurred, the officer had reasonable suspicion to believe that the

appellant had been driving while intoxicated.  Accordingly, we hold that the circuit court's denial of

the motion to suppress was not error, and we affirm the appellant's conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On October 9, 2015, Officer Scott Phillips of the Henrico County Police received a "service call" from "dispatch." Dispatch reported that a citizen had been "following" a driver who was "operating a red Mazda SUV" that had arrived at the Jewish Community Center (JCC). The dispatcher further relayed that the driver was "all over the road" and "running off the road."[2] Officer Phillips responded to the call as the "backup officer." Phillips testified that based on everything the dispatcher told him, he "fe[lt] like [he] was responding to an impaired driver."

When Officer Phillips arrived at the JCC, he drove through the parking lot and toward the main entrance without activating his emergency lights. He saw a red Mazda SUV matching the description issued by dispatch parked in a public space near the building. On the opposite side of the parking lane, Officer Phillips saw a man standing at the back of a different car. Phillips "pulled by" and looked at the red SUV. As he "slowed," he "looked over" at the man standing nearby. Upon "ma[king] eye contact," the officer "sort of pointed to the SUV," looked at the man again, and received "a positive response of a head nod."

Officer Phillips noticed that no one was inside the SUV, but he saw a man sitting on a bench just outside one of the entrances to the JCC. Someone who appeared to be a security officer was standing next to the man. Phillips parked his police car in front of the building, about twenty-five feet away from the bench. He did not activate any of the emergency lights on his vehicle. The officer got out of his car and walked up to the man, who was the appellant.

---

[1] In ruling on the propriety of a circuit court's decision on a motion to suppress, the appellate court views the evidence in the light most favorable to the party who prevailed below, in this case Henrico County. E.g., Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012).

[2] The record establishes that the citizen's call to the police was recorded.

Officer Phillips "asked" the appellant to "join" him by his police car in an effort to get the appellant "away from the front door of the school." The appellant stood up and walked with Phillips to the officer's car. Phillips then "asked" the appellant if he had his driver's license with him, and the appellant handed the officer his license. At about the same time that Officer Phillips received the appellant's license, he "detect[ed] an odor of alcoholic beverage about [the appellant's person]." Also, the appellant exhibited what Officer Phillips described as "an off-balance posture." Once the primary officer assigned to the call arrived, he conducted various field sobriety tests and arrested the appellant for driving under the influence of alcohol.

Prior to the appellant's trial, he filed a motion to suppress the evidence. He contended that he was seized when Officer Phillips asked for his identification and that the officer lacked reasonable suspicion to detain him. The prosecutor responded by "conced[ing]" that the appellant was "seized" when Officer Phillips received the appellant's driver's license. Nevertheless, he argued that the seizure was lawful because the officer had reasonable suspicion to detain the appellant for either driving under the influence (DUI) or public intoxication.

The circuit court ruled based on the totality of the circumstances that the encounter began as a consensual one and that the officer developed reasonable, articulable suspicion to justify a brief investigative detention. The judge determined that Officer Phillips, the only witness at the suppression hearing, was "very credible." He found that the officer went to the JCC, saw a red Mazda, and received "acknowledgement" from "someone in the parking lot" that "this was the car that [the citizen had] been following." In the "same parking lot," the officer saw the appellant seated next to a security guard. The judge concluded that Officer Phillips "had the right to go up to" the appellant.

Additionally, the judge found that the officer asked the appellant, "[W]ould you mind coming with me so we can get away from this entrance," and the appellant "agreed to do that."

The judge further found that "at the same time" the officer asked for the appellant's driver's license, he smelled alcohol and saw the appellant "standing in the unusual ma[nn]er that he . . . described." The judge concluded that the report that the Mazda had been driven "all over the road," combined with the odor of alcohol emanating from the appellant and the way he was standing, provided the officer with reasonable, articulable suspicion to detain the appellant for further investigation.

After the circuit court denied the motion to suppress, the appellant entered a conditional guilty plea, retaining the right to appeal the denial of his motion. The court accepted the plea, convicted the appellant, and sentenced him to six months in jail, with five months fifteen days suspended.

## II. ANALYSIS

The appellant contends that the denial of his motion to suppress the evidence derived from the seizure of his person was error. He asserts that he was seized "the moment [the officer] took [his] license" and notes that the prosecutor agreed with this conclusion in the circuit court. He suggests that the totality of the circumstances known to the officer at the time did not provide reasonable suspicion that he had been driving while intoxicated. Additionally, the appellant notes that the court did not make any findings on the prosecutor's alternative argument that the officer "could have been conducting an investigation into a possible drunk in public" offense.

When challenging the denial of a motion to suppress evidence, the appellant bears the burden of establishing that reversible error occurred. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008). On appeal, the Court considers the evidence in the light most favorable to the party who prevailed below and affords to that party, in this case Henrico County, the benefit of all inferences fairly deducible from the evidence. Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016). The appellate court is bound by the circuit court's

"findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give[s] due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). The factual findings to which we defer include that court's assessment of the credibility of the witnesses. McCary v. Commonwealth, 36 Va. App. 27, 35, 548 S.E.2d 239, 243 (2001). Ultimately, however, the appellate court "review[s] *de novo* the [circuit] court's application of defined legal standards, such as whether the police had reasonable suspicion" to detain the appellant. Bland v. Commonwealth, 66 Va. App. 405, 412, 785 S.E.2d 798, 801 (2016). This *de novo* review "involves application of an objective rather than a subjective standard." Id.

The law recognizes "three distinct types of police-citizen interactions: (1) arrest[s], which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief [consensual] encounters between police and citizens." Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012) (citations omitted) (quoting United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002)). It is well established that the Fourth Amendment "does not require any level of suspicion" for a consensual encounter, which may include "non-coercive questioning by officers" and "a request for identification." Id.

An encounter remains consensual "[a]s long as the police do not convey, by word or deed, that compliance with their request is mandatory." Montague v. Commonwealth, 278 Va. 532, 538, 684 S.E.2d 583, 587 (2009). Further, the fact that "most individuals will feel obligated to respond when asked questions by a police officer" does not, standing alone, "convert a consensual encounter into a seizure." Id. A seizure has not occurred "unless, taking into account all the circumstances of the encounter, 'a reasonable person would . . . believe[] that he was not

free to leave'" or disregard the questions. Id. at 539, 684 S.E.2d at 587 (alterations in original) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Factors that might suggest that a seizure has occurred include "the threatening presence of several police officers, their display of weapons, a physical touching of the person to whom the questions are directed, and the use of language [or tone of voice] indicating that compliance with the police request is required." Id.; see Mendenhall, 446 U.S. at 554.

The appellant contends that Officer Phillips seized him when the officer "received" his driver's license "and did not return it to him." He also notes in support of his argument that the prosecutor conceded in the circuit court that once the officer obtained his driver's license, he was seized for Fourth Amendment purposes. We reject this argument for two reasons.

First, although a party may concede a fact or facts, if a party offers a concession on a point of law, an appellate court may not blindly accept the concession and reverse a conviction on that basis. See Wright v. Commonwealth, 278 Va. 754, 760 n.3, 685 S.E.2d 655, 658 n.3 (2009); Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*). Instead, the reviewing court must conduct an independent legal analysis to determine whether reversal is required. See Wright, 278 Va. at 760 n.3, 685 S.E.2d at 658 n.3; Logan, 47 Va. App. at 172 n.4, 622 S.E.2d at 773 n.4. Accordingly, this Court must independently examine whether the law supports the circuit court's denial of the appellant's motion to suppress, which includes determining whether, and if so when, the appellant was seized.

Second, controlling authority establishes that Officer Phillips' request for and receipt of the appellant's driver's license was not a seizure. The Supreme Court of Virginia considered this question in Branham v. Commonwealth, 283 Va. 273, 720 S.E.2d 74 (2012). In that case, the police encountered the defendant in the driver's seat of a car parked near a house at which they were attempting to serve arrest warrants. Id. at 276-77, 720 S.E.2d at 76. One of the officers

shined his spotlight on the defendant's car and asked the defendant for his driver's license. Id. at 277, 720 S.E.2d at 76. While awaiting the results of the license check, the same officer asked the defendant "what was going on." Id. The officer also asked whether the man had anything illegal and if he would "mind stepping out of the vehicle" for a weapons frisk. Id. After complying, the defendant consented to a search of his person. Id. Additionally, no evidence established that the defendant "ever asked for the return of his license." Id. at 278, 720 S.E.2d at 76.

Branham moved to suppress contraband found in the search of his person, contending that he was seized under the Fourth Amendment "as soon as [the officer] took his driver's license." Id. at 278, 720 S.E.2d at 77. The Court rejected that argument, holding that the encounter, including the license request, was wholly consensual. Id. at 280, 720 S.E.2d at 78. In doing so, it noted that Code § 46.2-104, which "requir[es] the owner or operator of a motor vehicle to exhibit his driver's license to an officer for identification, applies only when such a driver has received a signal to stop from a law-enforcement officer." Id. Because the officer had not stopped the defendant in that fashion, the Court reasoned that he "was not required by law to surrender his driver's license for a record check." Id. Therefore, the Court concluded that the officer's request to see the defendant's driver's license was "no more than a request" and the defendant's "compliance was voluntary and not coerced." Id. The Court noted that none of the other facts converted the consensual encounter into a seizure because the "other officers did not say anything" to the defendant, there was "no display of weapons or emergency lights," the defendant's "car was not blocked," and "no threatening or coercive tone of voice was used." Id.

Similarly, in the instant case, the appellant was not required by law to surrender his license because when the officer requested it, the appellant was not the "operator of a motor vehicle" who had "received a signal to stop from a law-enforcement officer." See id. Instead, the encounter began in a consensual fashion when the lone officer simply asked the appellant,

who was sitting on a bench, "[W]ould you mind coming with me so we can get away from this entrance," and the appellant "agreed" to go with him. The evidence in the record further supports the circuit court's finding that Officer Phillips' exchange with the appellant about his driver's license was similarly a request to which the appellant agreed. See id. Officer Phillips was the only police officer on the scene at that time, and the circuit court expressly found that his testimony was credible. The officer testified that he did not activate the lights on his police car. In addition, no evidence indicated that the officer raised his voice, touched the appellant, displayed his weapon, or indicated in any way that the appellant's compliance with his request was required. Under these facts, the request for and receipt of the appellant's license did not convert the consensual encounter into a seizure.

As soon as Officer Phillips detected the odor of alcohol and saw that the appellant was having problems with his balance, observations that he made simultaneously with the license request, the officer had reasonable suspicion to detain the appellant. As the circuit court ruled, the officer's own observations, along with the tip from the concerned citizen, provided reasonable suspicion that the appellant had been driving under the influence of alcohol.

"In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Mason, 291 Va. at 368, 786 S.E.2d at 151 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "The test is not what the officer thought" but, rather, "whether the facts and circumstances apparent to him at the time of the [seizure] were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law [had occurred,] was occurring[,] or was about to occur." Id.; see Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (en banc). This standard "requires far more than an officer's 'hunch' or 'gut feeling' but far less than actual

proof." Mason, 291 Va. at 369, 786 S.E.2d at 152. Additionally, conducting this totality of the circumstances analysis requires consideration of the officer's training and experience. Harris v. Commonwealth, 241 Va. 146, 149, 400 S.E.2d 191, 193 (1991). However, the officer need not expressly articulate such a suspicion as long as the record contains objective facts to support it. Mason, 291 Va. at 369-70, 786 S.E.2d at 152; see Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*).

Whether the totality of the circumstances justifies a brief investigatory detention "is dependent upon both the content of information possessed by police and its degree of reliability." Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). Where part of the information is provided by an informant, "[a] court must consider both 'the veracity of the informant and the basis of his or her knowledge.'" Reed v. Commonwealth, 36 Va. App. 260, 267, 549 S.E.2d 616, 619 (2001) (quoting Jefferson v. Commonwealth, 27 Va. App. 1, 13, 497 S.E.2d 474, 480 (1998)). If the informer is "a disinterested citizen who is either a victim of or eyewitness to[] a crime, police properly may give [the informer's report] more weight . . . than they would to information from a 'criminal' informer, whose motives are less likely to be pure." Id. at 267-68, 549 S.E.2d at 619-20. Further, if the tipster's identity is known or likely to be ascertainable, the information is entitled to greater weight because the tipster subjects himself to liability if the report proves false. See Jackson v. Commonwealth, 267 Va. 666, 679-81, 594 S.E.2d 595, 602-03 (2004). Finally, a tip indicating that it is based on firsthand information is entitled to more weight than one failing to convey the basis of the tipster's knowledge. Bland, 66 Va. App. at 416, 785 S.E.2d at 803.

Here, the officer knew that his presence at the JCC had been initiated by a concerned citizen who called the police to report he had followed a red Mazda SUV that was "all over the road" and "running off the road." The reliability of the tip was enhanced because the call was

recorded, increasing the possibility that the tipster's voice, at the very least, could be used to identify him if the tip proved to be false.[3]  See Navarette, 134 S. Ct. at 1690.

After Officer Phillips located an SUV matching the reported description in the JCC parking lot, he saw a man he believed to be the concerned citizen standing just a few cars away. Phillips believed the man was the tipster because when the officer pointed to the SUV and looked back at the man, the man nodded his head.  This evidence supports the circuit court's finding that the citizen tipster was present at the scene when the officer arrived and that he confirmed the SUV the officer saw parked near the door was the same vehicle that the tipster had reported for its erratic driving.

Based on the information that he received from dispatch, Officer Phillips believed that he was looking for an "impaired driver."  The officer did not know with certainty that the person he saw sitting on the bench near the door—the appellant—was that driver.  Nevertheless, once the officer engaged the appellant in a consensual encounter and personally observed that the appellant smelled of alcohol and was having balance problems, the officer had at least reasonable suspicion to detain the appellant briefly to investigate further.[4]  Moreover, the evidence, viewed objectively, provided the officer with reason to believe that he could make immediate personal contact with the citizen tipster.  A brief detention was permitted under these circumstances to allow the officer to confirm or dispel his suspicion that the appellant had operated the SUV and had done so while under the influence of alcohol.  Cf. id. at 1690-91 (observing that a "reliable

---

[3] The record does not establish whether dispatch obtained the tipster's name or other identifying information.

[4] Officer Phillips testified that he detained the appellant for three to five minutes before the arrival of the primary officer assigned to the call and that, while waiting, he did not take any additional steps to confirm or dispel the suspicion that the appellant had committed a DUI or was committing the offense of public intoxication.  As the appellant confirmed at oral argument, he challenges only the constitutionality of the basis for Officer Phillips' detention at the time he took the license, not the duration of the detention.

- 10 -

tip" alleging driving behavior such as "'weaving all over the roadway'" "generally would justify a traffic stop on suspicion of drunk driving" (quoting People v. Wells, 136 P.3d 810, 811 (Cal. 2006))); Jones v. Commonwealth, 51 Va. App. 730, 737, 660 S.E.2d 343, 346 (2008) (observing that "[t]he odor of alcohol emanating from a suspect" who an officer observed driving "provided a police officer with 'reasonable suspicion that [he] was driving while intoxicated'" (quoting Wallace v. Commonwealth, 32 Va. App. 497, 505, 528 S.E.2d 739, 742 (2000))), aff'd in part and vacated in part on other grounds, 279 Va. 52, 688 S.E.2d 269 (2010). Contrary to the appellant's suggestion, the fact that he was no longer driving the vehicle is of no import on the facts of this case. See Code § 19.2-81(D) (permitting an officer to make a warrantless arrest for misdemeanor DUI "within three hours of the alleged offense . . . whether or not the offense was committed in such officer's presence"); cf. Navarette, 134 S. Ct. at 1691-92 (observing that "allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences").

The record supports the conclusion that Officer Phillips had reasonable suspicion to detain the appellant in light of objective facts indicating that he may have committed a DUI.[5]

### III. CONCLUSION

On the facts of this case, the appellant was not seized when the officer asked to see his identification and received it from him. Additionally, the officer had reasonable suspicion to support an investigative detention as soon as he smelled alcohol on the appellant and observed his balance issues. Consequently, any seizure of the appellant that occurred after the officer

---

[5] The Commonwealth alternatively argues that the objective facts known to the officer also provided him with reasonable suspicion to investigate whether the appellant was committing the ongoing offense of public intoxication. See McGhee v. Commonwealth, 280 Va. 620, 624-25, 701 S.E.2d 58, 60 (2010); Crislip v. Commonwealth, 37 Va. App. 66, 71-72, 554 S.E.2d 96, 98-99 (2001). In light of our ruling that the officer had reasonable suspicion to investigate the DUI offense, we do not address this argument.

received his driver's license was reasonable under the Fourth Amendment, and we affirm the conviction.

Affirmed.
