COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Lorish and White
Argued at Norfolk, Virginia


TREVAUN JABEZ BROWN

MEMORANDUM OPINION* BY
v.        Record No. 1361-23-1          JUDGE KIMBERLEY SLAYTON WHITE
                                        OCTOBER 22, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge[1]

J. Barry McCracken, Assistant Public Defender, for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following the trial court's denial of his motion to suppress the evidence, Trevaun Jabez

Brown entered a conditional guilty plea to possessing a firearm after conviction of a felony under

Code § 18.2-308.2.  The trial court sentenced Brown to five years' incarceration with three years

suspended for that offense.  He argues on appeal that the trial court erred in denying his motion

to suppress because the police officers seized him in violation of his Fourth Amendment rights.

Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Robert B. Rigney considered and ruled upon Brown's motion to suppress the
evidence.  Judge Everett A. Martin, Jr., accepted Brown's conditional guilty plea, found him
guilty, and sentenced him for the firearm offense.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On May 23, 2021, along with his partner, Officer Gilley, Officer Labat[2] of the Norfolk Police Department was patrolling in the Oakleaf neighborhood, which he considered to be a high crime area based on his professional experience of making dozens of arrests there for various crimes involving firearms, narcotics, and trespassing. While patrolling, Officer Labat made eye contact with Trevuan Brown and observed Brown grab the left side of his waistband, turn his left side away from the patrol car, and walk toward the tree line leading to a Norfolk Redevelopment and Housing Authority (NRHA) property. Given that Officer Labat found Brown's actions suspicious and similar to actions of others he had encountered as a police officer, Officer Labat decided to follow Brown in his police car. Looking towards the police car, Brown again grabbed the left side of his waistband and tried to keep that side of his waistband away from the car. To continue following Brown, Officer Labat was required to cross oncoming traffic and activate his vehicle emergency lights. Brown, switching direction, then started to run back into the Oakleaf neighborhood, still holding his waistband.

Officer Labat stopped his car on the street, and he and his partner pursued Brown on foot. During the chase, Brown continued to hold his waistband. Officer Gilley said that based on his experience, "I know that people that are holding their waistbands while running often have a

---

[2] By May 23, 2021, Officer Labat had six years of police experience.

firearm on them." Officer Gilley caught Brown and, after a brief struggle, handcuffed him. Officer Labat observed Brown reaching with his right hand behind him and towards his pants. A brief pat down of Brown did not reveal any criminal paraphernalia.[3] However, when Officer Labat walked behind Brown, he noticed the shape of a firearm in Brown's pants. Officer Labat stated, "he was wearing skinny jeans. It was fairly easy to recognize that shape." Officer Labat first asked Brown if there was a round in the chamber then asked him if "it was facing up." Brown replied "no" to both questions. Then, Officer Labat reached into Brown's pants to secure the firearm. Contrary to Brown's answers, the gun was pointing up and had a round in the chamber.

Officer Labat testified that Brown was stopped and searched on NRHA property, where Officer Labat was specifically instructed to investigate trespassing. Brown was detained on "suspicion of trespassing and suspicion of carrying a concealed weapon." At the time of the stop and search, neither officer had any information about whether Brown was banned from NRHA property or whether Brown had a concealed weapon permit.

Brown was indicted for possessing a firearm after being convicted of a non-violent felony. Brown filed a pretrial motion to suppress, arguing that law enforcement unlawfully seized and searched him. Brown argued that the officers did not have probable cause or reasonable suspicion to justify the seizure of his person. The Commonwealth responded that the motion should be dismissed because "the seizure did not occur until after the defendant was apprehended, at which time the officers had reasonable suspicion that the defendant was trespassing onto the Oakleaf[] property and carrying a concealed weapon."

---

[3] The officer stated that he was "more . . . focused on trying to get him detained in handcuffs" and only conducted a limited pat down at that time.

The trial court denied the motion following an evidentiary hearing.  Brown entered a conditional guilty plea that preserved his right to appeal the trial court's decision on the motion to suppress.  The trial court sentenced Brown to five years' incarceration with three years suspended.  This appeal follows.

ANALYSIS

For his first argument, Brown asserts that the trial court erred in refusing to suppress the firearm the police found on his person because they initially seized him unlawfully.

"When this Court reviews a trial court's ruling on a motion to suppress, 'the appellant bears the burden of showing that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  *Scott v. Commonwealth*, 68 Va. App. 452, 458 (2018) (quoting *Sanders v. Commonwealth*, 64 Va. App. 734, 743 (2015)).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  *Bland v. Commonwealth*, 66 Va. App. 405, 412 (2016) (alteration in original) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).  "However, we review *de novo* the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure."  *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

The Fourth Amendment protects citizens against "unreasonable searches and seizures."  U.S. Const. amend. IV.  "If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures."  *McGee*, 25 Va. App. at 202 (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  "Reasonable suspicion is a 'particularized and objective basis' for

suspecting the person stopped of criminal activity." *Jones v. Commonwealth*, 52 Va. App. 548, 559-60 (2008) (quoting *Ornelas*, 517 U.S. at 696). "In determining 'whether a police officer had a reasonable suspicion to justify the seizure, we must consider the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer."'" *Id.* at 560 (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 421-22 (2003)). "[A] trained law enforcement officer may identify criminal behavior which would appear innocent to an untrained observer; however, "any such special meaning must be articulated to the courts and its reasonableness . . . assessed independently of the police officers' subjective assertions." *Taylor v. Commonwealth*, 6 Va. App. 384, 388 (1988) (second alteration in original). Furthermore, "[r]easonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1985)).

"There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." *Castaneda v. Commonwealth*, 7 Va. App. 574, 580 (1989) (en banc) (citing *Terry*, 392 U.S. at 21). "Although a mere 'hunch' does not create reasonable suspicion, *Terry*, 392 U.S. at 27, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause . . . ." *Bland*, 66 Va. App. at 413 (citation omitted) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). "The possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

The officers had reasonable, articulable suspicion to detain Brown. Officer Labat was familiar with the Oakleaf neighborhood, an area with significant criminal activity related to trespass violations, illegal firearm possessions, and narcotics crimes. On two separate occasions, after seeing the officers, Brown placed his open left hand on his left waistband and turned away from the officers. Brown tried to avoid police by walking into a tree line, which, in Officer Labat's experience, was behavior consistent with trespassing or possessing contraband. Brown continued to hold onto his waistband, even while running, which, in Officer Gilley's experience, indicated that he possessed a concealed firearm. In addition, when Officer Labat activated his lights, Brown immediately ran. "Headlong flight" in a high crime area is a relevant factor in evaluating reasonable suspicion to detain. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). "Headlong flight -- wherever it occurs -- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.*

Brown points out that this Court has previously held that a suspect's furtive movements in a "high crime area" is *not* sufficient, alone, to establish reasonable articulable suspicion. *See Riley v. Commonwealth*, 13 Va. App. 494, 499 (1992); *Smith v. Commonwealth*, 12 Va. App. 1100, 1102 (1991); *Goodwin v. Commonwealth*, 11 Va. App. 363, 367 (1990). But Brown's reliance on these cases is misplaced. Unlike those cases, the officers here were not only suspicious of Brown possessing contraband, likely a concealed weapon, but also that he was trespassing. Brown's presence in the area, combined with his furtive movements to avoid police attention, were indicative of criminal activity. In addition, none of the defendants in the cases above fled from police; but, here, Brown's desperation to avoid detainment is another significant factor that establishes reasonable articulable suspicion and distinguishes this case from those relied upon by Brown.

We recognize that we have held that a "'brisk' walk" from officers in a "high crime area" also does not create reasonable, articulable suspicion to detain. *Jones v. Commonwealth*, 53 Va. App. 171, 179-80 (2008). In fact, this Court distinguished the "headlong flight" principle of *Wardlow* and did not apply it in *Jones* where the evidence only established a short, "'brisk' walk" by the suspect. *Id.* at 179. Brown's "headlong flight" from police in this case falls squarely within the behavior outlined in *Wardlow*, not *Jones*. Brown's desperation to avoid detainment is a significant factor that supports reasonable articulable suspicion.

Flight was not the only factor here, however. In addition to his flight, the officers here believed Brown may be armed with a concealed weapon, based on Brown repeatedly moving his left hand to his waistband. And Officer Labat suspected Brown was trespassing based on his behavior. Brown's presence in the area, combined with his furtive movements to avoid police attention, were all indicative of criminal activity.

Therefore, reasonable suspicion here was based on the trained officers' experience-informed characterization of the high crime area, their observation of Brown continually holding onto something, likely a concealed weapon, at his waistband, their description of Brown's evasive movements, including moving his body and a change of direction, their belief that Brown was trespassing, and their assessment of Brown's "headlong flight" from them. As such, his detention was not unlawful.

Moving to Brown's second argument, he asserts that by handcuffing him during his detention, his seizure was elevated to that of an arrest requiring probable cause.[4] We disagree.

"Once an officer has lawfully stopped a suspect, he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status

_____

[4] Brown does not argue on appeal that any action taken by police after his seizure, including taking the firearm from his person, was unlawful. We therefore limit our analysis to the questions of seizure and arrest only.

- 7 -

quo during the course of the stop.'" *Servis v. Commonwealth*, 6 Va. App. 507, 519 (1988) (alterations in original) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" *Thomas v. Commonwealth*, 16 Va. App. 851, 857 (1993) (quoting *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir. 1989)), *adopted upon reh'g en banc*, 18 Va. App. 454, 455 (1994). "While the 'investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time,' the 'scope of the intrusion permitted will vary [with each case].'" *Id.* at 856-57 (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). The means must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

The officers' use of handcuffs in this case was reasonable and did not elevate the detention to an arrest. The officers initially had concerns that Brown possessed a concealed firearm based how he continually held onto his waistband and based on his furtive movements. Brown repeatedly attempted to evade the officers by moving in a different direction and by turning his body away from the officers. Then, Brown actually ran from the officers. Brown struggled against Officer Gilley, initially refusing to obey his commands. Brown's evasive actions, furtive movements, attempted flight, struggling and uncooperative behavior, as well as the potential risk inherent in the possession of a concealed firearm, made his handcuffing reasonable to protect "personal safety and to maintain the status quo during the course of the stop." *Servis*, 6 Va. App. at 519 (quoting *Hensley*, 469 U.S. at 235). The handcuffing therefore did not raise the encounter to an arrest, requiring probable cause.

CONCLUSION

The officers had reasonable, articulable suspicion to detain Brown, and the manner in which they did so did not elevate that seizure to an arrest. The trial court therefore did not err in concluding that Brown's detention was lawful and in denying the motion to suppress. For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*