# COURT OF APPEALS OF VIRGINIA

### Record No. 1875-24-1

JEROME DEMETRIUS COOPER

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Chaney and Frucci

Opinion Issued May 19, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge Designate[1]

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant. Appellant submitting on brief.

(Jason S. Miyares,[2] Attorney General; Robert D. Bauer, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## <u>PER CURIAM</u>

Following a bench trial, the circuit court convicted Jerome Demetrius Cooper of possessing a firearm after having been convicted of a violent felony. On appeal, Cooper challenges the circuit court's denial of his motion to suppress, arguing that the police officers "lacked probable cause to seize and detain Cooper" when they initiated a traffic stop on Cooper's vehicle. For the following reasons, we affirm the circuit court's judgment.[3]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Tench presided over Cooper's trial and sentencing. William H. Shaw, III, Judge Designate, presided over the motion to suppress at issue on appeal.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[3] Cooper waived his right to oral argument. Furthermore, having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional

# BACKGROUND[4]

Newport News Police officers were surveilling Cooper while he was driving "in the area of 26th Street and Orcutt Avenue" of Newport News. There are two lanes on 26th Street, which is a "one-way road going westbound." Orcutt Avenue is "two lanes in opposing directions," with "one lane in each direction." Sergeant Derouen was at a red light in the right lane of 26th Street where the two roads intersected when he saw Cooper drive into the intersection from Orcutt Avenue, turn left, and make a "wide turn." Sergeant Derouen said that the turn was improper, as Cooper turned into the rightmost lane of 26th Street. The sergeant asked Officer Nicholas Jefferson to initiate a traffic stop.

Officer Jefferson followed Cooper and activated his emergency lights and siren as Cooper turned onto another road. Though Cooper initially slowed his vehicle, he soon sped away, turning right twice before stopping in a driveway, 15 feet from a fence line. Cooper exited his car, retrieved a black object from the driver's side floorboard, and threw it over the fence. Officers then detained Cooper. Beyond the fence line, officers retrieved a black pistol and magazine. A DNA sample taken from the firearm was consistent with Cooper's DNA.

Before trial, Cooper moved to suppress "all physical evidence" from the incident, arguing that the police had no reasonable suspicion of illegal activity when they initiated the stop. He argued that, at the time of the stop, the road he turned onto was not marked with lane dividers.

---

process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329. Further, "this Court's 'review of the record includes evidence adduced at both the trial and the suppression hearing.'" *Fauntleroy v. Commonwealth*, 62 Va. App. 238, 244 (2013) (quoting *Greene v. Commonwealth*, 17 Va. App. 606, 608 (1994)).

Thus, he contended, he was entitled to "travel in any portion" of the roadway. Multiple officers testified that on the day of Cooper's arrest, traffic along the road proceeded "side by side" and was governed by multiple traffic signals, indicating it was a two-laned road. Cooper introduced undated satellite photographs from Google Maps showing that, at the time the photos were taken, the road had been recently repaved and had no lane markings. One of the officers testified that at the time of the incident, the road was not being repaved and had markings dividing the lanes.

Cooper argued that "lanes are defined by lane markings" and that any road lacking them was, by definition, a one-laned road. The Commonwealth argued that the road was two-laned even if there were no lane markings due to the presence of two traffic signals. It also contended that Cooper had abandoned the weapon before his seizure, because he ignored the officer's emergency lights and instead attempted to flee. The circuit court took the matter under advisement and later issued a written order denying the motion to suppress. The circuit court ruled that the initial attempt to stop Cooper was reasonable even if there were no lane markings, "a fact that was not clear from the evidence." After Cooper's subsequent bench trial, Cooper was convicted of possessing a firearm after having been convicted of a violent felony.[5] Cooper appeals.

## ANALYSIS

Cooper contends that the circuit court erred in denying his motion to suppress because "the officers lacked probable cause to seize and detain Cooper." Specifically, he argues that he did not make an improper turn, thus there was no justification to seize him. "On review of the trial court's denial of a motion to suppress, an 'appellant bears the burden of establishing that reversible error occurred.'" *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v.*

---

[5] Cooper was previously convicted of murder in violation of Code § 18.2-32, along with two prior convictions of using or displaying a firearm during the commission of a felony in violation of Code § 18.2-53.1.

*Commonwealth*, 71 Va. App. 462, 474 (2020)). We "examine[] the trial court's application of the law *de novo*, including its assessment of whether reasonable suspicion or probable cause supported a search." *Bagley v. Commonwealth*, 73 Va. App. 1, 13 (2021). "However, we defer to the trial court's 'findings of historical fact,' taking care to review them 'only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008)). Furthermore, "[w]e review issues of statutory interpretation de novo." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

"[S]topping a motor vehicle and detaining the operator constitute[s] a 'seizure' within the meaning of the Fourth Amendment." *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (first alteration in original) (quoting *Lowe v. Commonwealth*, 230 Va. 346, 349 (1985)). "The stop 'seizes' all occupants of the vehicle." *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (stating "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment"). "Nevertheless, an officer may stop a vehicle, effectively seizing its occupants, when 'there is at least articulable and reasonable suspicion . . . that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Mitchell*, 73 Va. App at 246 (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). As such, as an initial matter, we note that the officers needed an articulable and reasonable suspicion that Cooper violated the law, rather than probable cause as suggested by Cooper, to conduct a traffic stop.

"There are no bright line rules" for "determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." *Id.* (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)). The standard requires "an officer to possess, at the time of the stop, 'a particularized and objective basis for suspecting the particular person stopped.'" *Id.* (quoting *Heien*, 574 U.S. at 60). A "mere hunch" is insufficient, but "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* at 246-47 (quoting *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016)). Importantly, "[t]he possibility that an officer ultimately may prove to be mistaken . . . does not negate, in and of itself, the officer's reasonable, articulable suspicion." *Id.* at 247 (citing *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011)).

> At any intersection where traffic is restricted to one direction on one or more of the roadways, and at any crossover from one roadway of a divided highway to another roadway thereof on which traffic moves in the opposite direction, the driver intending to turn left at any such intersection or crossover shall approach the intersection or crossover in the extreme left lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection or crossover the left turn shall be made so as to leave the intersection or crossover, as nearly as practicable, in the left lane lawfully available to traffic moving in such direction upon the roadway being entered.

Code § 46.2-846(A)(3).[6]

In the case at hand, it is undisputed that Cooper was driving on a two-way roadway when he approached an intersection with 26th Street. 26th Street was a "one-way road" consisting of two

---

[6] The parties do not claim that any exception to this statute is applicable to the facts at hand nor does anyone dispute that officers may conduct traffic stops for the violation of this statute.

lanes.[7] Multiple officers testified that on the day of Cooper's arrest, traffic along the road proceeded "side by side" and was governed by multiple traffic signals, indicating it was a two-laned road.[8] Cooper, in making his left turn, was required to turn into the "left lane lawfully available to traffic." Code § 46.2-846(A)(3). However, the evidence presented supported that he did not do so, thus the officers had an articulable, reasonable suspicion that Cooper violated Code § 46.2-846(A)(3). While an officer attempted to initiate a traffic stop for the violation, Cooper sped away. Eventually, he pulled into a driveway, got out of his vehicle, and tossed a black item over the nearby fence line. It was after this action that officers retrieved the black firearm from the other side of the fence.

"A warrantless seizure of abandoned property is not a violation of the Fourth Amendment." *Commonwealth v. Holloway*, 9 Va. App. 11, 17-18 (1989)). "One who voluntarily abandons property forfeits any expectation of privacy he or she may have in it. Therefore, he or she has no standing to complain of the property's search and seizure." *Id.* at 18 (citation omitted). "The determination of this intent must be made after consideration of all relevant circumstances, but two factors are particularly important: denial of ownership and physical relinquishment of the property." *Id.*

"Abandonment of property by a person under Fourth Amendment analysis 'is different from the property law concept of abandonment. A person may retain a property interest in personal property while, at the same time, relinquishing his or her reasonable expectation of privacy in that

---

[7] A "lane" is a "portion of a roadway designed or designated to accommodate the forward movement of a single line of vehicles." Code § 46.2-100.

[8] Notably, the plain text of Code § 46.2-846(A)(3) and Code § 46.2-100 does not specify that physical markings are a requirement for a path of movement to be a "lane" under the Code, but even if it was a requirement, the record here would support finding multiple marked lanes on 26th Street at the time of the incident. While Cooper presented Google Maps photos that showed the road had been repaved and was not painted at some point in time, an officer testified that on the date of the incident, the road was not being repaved and there were markings outlining the lanes.

property.'" *Knight v. Commonwealth*, 61 Va. App. 297, 308 (2012) (quoting *Holloway*, 9 Va. App. at 18). "A person's intent to retain a reasonable expectation of privacy [governs] whether the property has been abandoned . . . [and] is to be determined by objective standards. Such an intent may be inferred from words, acts[,] and other objective facts." *Id.* (alterations in original) (quoting *Watts v. Commonwealth*, 57 Va. App. 217, 228 (2010)).

The facts here show that, after attempting a lawful traffic stop on Cooper, he sped away and disposed of the firearm. Under these circumstances, it is clear that in doing so, Cooper abandoned any reasonable expectation of privacy with regard to the firearm. Accordingly, the circuit court did not err in denying the motion to suppress.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*