COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


QUINSHAWN P. ROSS, S/K/A
 QUINSHAWN PERNELL ROSS
                                              OPINION BY
v.    Record No. 0666-00-2          JUDGE SAM W. COLEMAN III
                                          MARCH 13, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

            Douglas A. Ramseur (Bowen, Bryant,
            Champlin & Carr, on brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Quinshawn P. Ross was convicted in a bench trial of

possession of cocaine with intent to distribute.  The sole issue

on appeal is whether the trial court erred by denying Ross' motion

to suppress.  Finding no error, we affirm.

                          BACKGROUND

     At approximately 5:00 p.m., Richmond Sheriff's Deputy Mark

Ingram was sitting in his patrol vehicle at a traffic intersection

in a high crime area.  While running a warrant check on an

unrelated matter, Ingram observed Ross approach the passenger side

of a vehicle that had stopped at the intersection.  As Ross

approached the vehicle, he removed a plastic baggie from the

waistband of his shorts.  Ross gave the passenger an object from

the baggie, and in exchange, the passenger handed Ross money. Believing that he just observed a hand-to-hand drug transaction, Ingram approached Ross and searched him. Ingram found sixteen rocks of crack cocaine, packaged in individual baggie corners located in a larger plastic baggie, and $110 in currency inside Ross' shorts.

### ANALYSIS

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

"A warrantless search is per se unreasonable and violative of the Fourth Amendment of the United States Constitution,

subject to certain exceptions."  Tipton v. Commonwealth, 18 Va.
App. 370, 373, 444 S.E.2d 1, 3 (1994).  A search made by a law
enforcement officer pursuant to a lawful custodial arrest,
which, of course, must be based on probable cause, is a well
recognized exception to the warrant requirement.  United States
v. Robinson, 414 U.S. 218, 235 (1973).

> It is the fact of the lawful arrest which
> establishes the authority to search . . .
> [and] in the case of a lawful custodial
> arrest a full search of the person is not
> only an exception to the warrant requirement
> of the Fourth Amendment, but is also a
> "reasonable" search under that Amendment.

Id.; see also 2 Wayne R. LaFave, Search and Seizure § 4.5(e), at
543-44 (3d ed. 1996) (noting that "[i]f there is probable cause
to believe that a certain individual has on his person the
evidence, fruits, or instrumentalities of crime, it would be an
unusual case in which there was not also probable cause to
believe that this individual was a participant in the criminal
activity under investigation" such that "the more usual
procedure is simply to arrest that person and then search him
incident to the arrest" rather than first obtaining a search
warrant for his person).

The dispositive issue is whether Ingram had probable cause to arrest Ross.[1]  "'[T]he test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed.'"  DePriest v. Commonwealth, 4 Va. App. 577, 583-84, 359 S.E.2d 540, 543 (1987) (quoting Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970)); accord Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).  "In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control."  Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979) (internal quotation and citation omitted).  "To establish probable cause, the Commonwealth must

---

[1] The Commonwealth argues, and the defendant concedes, that Ingram had reasonable suspicion that criminal activity was afoot, sufficient to justify a Terry stop.  The Commonwealth further asserts that drugs were found in a lawful pat-down for weapons.  We disagree and find that the search of Ross exceeded that which is permissible under Terry and, therefore, the search must be supported by probable cause.  Terry v. Ohio, 392 U.S. 1, 29 (1968) (holding that a pat-down or a search for weapons must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer").  Because the search was a generalized search for drugs and was not a frisk for weapons based on a concern for officer safety, Ingram must have had probable cause to believe that Ross possessed drugs in order to justify the warrantless search.

show 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Ford v. City of Newport News, 23 Va. App. 137, 143-44, 474 S.E.2d 848, 851 (1996) (citations omitted); accord DeFillippo, 443 U.S. at 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime."). "Probable cause to arrest must exist exclusive of the incident search. [However,] [s]o long as probable cause to arrest exists at the time of the search, . . . it is unimportant that the search preceded the formal arrest if the arrest followed quickly on the heels of the challenged search." Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990) (internal quotations and citations omitted).

We hold that, based on the totality of circumstances, Ingram had probable cause to arrest Ross for possession of a controlled substance, thereby justifying a full search of his person. Ingram observed Ross, in a high-crime area known for drug activity, take a plastic baggie from the waistband of his shorts and approach a vehicle that had stopped at the intersection. The vehicle was stopped just long enough for Ross to hand an object from the baggie to the passenger in exchange for currency. "If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable

cause to arrest the individual without a warrant."  Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 536-37 (1995).

Ingram had reason to believe he had witnessed Ross conduct a hand-to-hand drug transaction with the passenger of the vehicle.  Ross handed an unidentified object to the occupant of a vehicle that had stopped at an intersection.  In return, the occupant of the vehicle handed Ross some money.  Standing alone, Ingram's observation of the exchange of an unidentified item for money may not have given rise to probable cause.  See generally LaFave, supra § 3.6(b), at 299-301.  However, Ingram had also observed Ross remove a plastic baggie from inside his shorts and then remove the object from the plastic baggie.  Plastic baggies are commonly used to store drugs.  Under the totality of those circumstances, we hold that Ingram had probable cause to arrest Ross.  See generally In re J.D.R., 637 A.2d 849 (D.C. 1994) (finding probable cause to arrest where police officer, after making a lawful traffic stop, observed a corner of a plastic baggie protruding from the defendant's cast and, after the officer requested to see the baggie, defendant attempted to hide it); Blanding v. State, 446 So.2d 1135, 1137 (Fla. Dist. Ct. App. 1984) (per curiam) (noting that plastic bags are commonly used as containers for drugs); People v. McRay, 416 N.E.2d 1015, 1018-20 (N.Y. 1980) (recognizing that a glassine envelope is a

"telltale sign of heroin" and that the passing of a glassine envelope signals an illicit drug transaction rather than some innocuous act). The fact that Ingram did not see and could not identify the item that Ross removed from the baggie does not preclude a finding of probable cause under these circumstances. See State v. Martin, 956 P.2d 956, 958-59 (Or. 1998) (finding probable cause to arrest where officer, who was stopped at an intersection at 11:00 p.m. in a known drug area, observed through the rear window of the vehicle in front of him, the defendant approach the vehicle, after being signaled by the passenger, and put his head and one hand in the vehicle for a few seconds; the officer did not observe any objects or money exchanged); People v. Jones, 683 N.E.2d 14, 15 (N.Y. 1997) (finding that fact that officer did not observe item that was exchanged for money was not dispositive where officer was experienced and he observed the activity occur in a drug-prone area, the manner in which the exchange was conducted, and the defendant hide a plastic bag immediately after the exchange). The fact that money was exchanged for an item removed from a plastic baggie that had been secreted inside Ross' shorts provides additional support for our finding of probable cause. See also McRay, 416 N.E.2d at 1020 (stating that "probable cause almost surely would exist" if money is passed in exchange for an object in a container commonly associated with drugs);

Commonwealth v. Santaliz, 596 N.E.2d 337, 339-40 (Mass. 1992) (articulating four factors which tend to establish probable cause, including the "unusual nature of the transaction" which, in that case, was the defendant approaching a taxicab that just stopped and exchanging an object with the passenger for money); Blanding, 446 So.2d at 1137 (finding that exchanging cash for unseen substance in plastic bag is a factor in determining probable cause to arrest). Finally, the exchange occurred in a high crime area with a high incidence of drug activity and the observed activity was suspicious and furtive. See Santaliz, 596 N.E.2d at 339-40 (characterizing as furtive the defendant removing the object from his companion's waistband and conducting the exchange with the passenger in silence). Although Ingram had no drug training and had never served on a drug task force, he was a five and one-half year veteran of the sheriff's department who had made approximately six drug-related arrests. See LaFave, supra § 3.2(c). Accordingly, based on the totality of the circumstances, we find that Ingram had probable cause to arrest Ross for possessing drugs with the intent to distribute.

We affirm the trial court's denial of Ross' motion to suppress and, therefore, affirm the conviction.

Affirmed.