COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Petty
Argued at Lexington, Virginia


JOSE CASTRO SANCHEZ

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1572-09-3                JUDGE ROBERT J. HUMPHREYS
                                                      JUNE 15, 2010
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                            David A. Melesco, Judge

          Jason S. Eisner, Assistant Public Defender (Office of the Public
          Defender, on brief), for appellant.

          Gregory W. Franklin, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


      Jose Castro Sanchez ("Sanchez") appeals his conviction, upon a conditional guilty plea,

for possession of cocaine, in violation of Code § 18.2-250.  On appeal, Sanchez contends that the

trial court erred in denying his motion to suppress the cocaine seized from his person.  Sanchez

argues that the police lacked reasonable suspicion to stop his vehicle and, thus, the cocaine

obtained from his person should have been suppressed as the product of an unlawful detention.

For the following reasons, we disagree with Sanchez and affirm.[1]

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, we recite only those facts and incidents of
the proceedings as are necessary to the parties' understanding of this appeal.  We view those
facts "'in the light most favorable to the prevailing party in the trial court,'" in this case the
Commonwealth.  Parker v. Commonwealth, 275 Va. 150, 155, 654 S.E.2d 580, 583 (2008)
(quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).

Our sole task in this appeal is to determine whether Officer Clark Gagnon ("Gagnon") had reasonable suspicion to believe that Sanchez was engaged in criminal activity at the time he stopped Sanchez's vehicle. Sanchez argues that Gagnon did not, and thus, he contends that the evidence obtained as a result of the stop should be suppressed as "fruit of the poisonous tree." We disagree.

"An appellant's claim that evidence was seized in violation of the Fourth Amendment 'presents a mixed question of law and fact that we review *de novo* on appeal.'" Winston v. Commonwealth, 51 Va. App. 74, 78, 654 S.E.2d 340, 342 (2007) (quoting Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005)). However, "'[i]n making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment.'" Id. (alteration in original). The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

Though the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot," Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "A Terry stop must be supported by specific and articulable facts that would 'warrant a man of reasonable caution in the belief that the action taken was appropriate.'" United States v. Blair, 524 F.3d 740, 750 (6th Cir. 2008) (quoting Terry, 392 U.S. at 21-22). "In other words,

'[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" Id. (quoting Wardlow, 528 U.S. at 124).

In determining whether or not reasonable suspicion existed for a Terry stop, we "must look to the totality of the circumstances" of the particular case. United States v. McCoy, 513 F.3d 405, 411 (4th Cir.), cert. denied, 128 S. Ct. 2492 (2008). While "[t]he character of the location and the time at which a person is observed are relevant factors" in this analysis, they alone are insufficient to support a Terry stop. McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008); see also Wardlow, 528 U.S. at 124 ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). That said, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation . . . ." Wardlow, 528 U.S. at 124.

We hold that the circumstances and actions observed by Officer James Simmons ("Simmons") in this case were sufficient to create a reasonable, articulable suspicion that Sanchez was engaged in criminal activity. While on special assignment "doing some drug reversals" in the City of Danville, Simmons observed Sanchez sitting on a retaining wall in the front yard of a house notorious for its *recent* drug activity. Both Simmons and Gagnon testified that *this particular house* had been the subject of numerous raids by the Danville Police Department.[2] In fact, Gagnon testified that one week prior to this incident, their department executed a search warrant on this house and recovered significant amounts of marijuana,

---

[2] We find it significant that unlike most cases involving reasonable suspicion in which an officer will simply characterize an area as a "high crime area," here, Simmons and Gagnon focused their testimony on the specific nature and history of criminal activity at this particular house including illicit activities that had very recently transpired therein.

cocaine, and firearms. *It was in front of this house* that Simmons observed Sanchez engage in what appeared to be a hand-to-hand drug transaction. As he passed by, Simmons saw a man leave the front yard of the residence and approach Sanchez. According to Simmons, the man held his fist "palm down" and appeared to place something in Sanchez's hand. The two men did not appear to converse during their encounter, and Sanchez left in his vehicle immediately thereafter. At that point, Simmons radioed Gagnon and gave a description of Sanchez's vehicle. Simmons stated that he had witnessed a hand-to-hand drug transaction and ordered Gagnon to stop Sanchez's vehicle.[3]

It is important to note that "reasonable suspicion 'does not deal with hard certainties, but with probabilities.'" McCoy, 513 F.3d at 413 (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)). Thus, "reasonable suspicion may exist even if each fact standing alone is susceptible to an innocent explanation." Id. at 413-14. While viewed separately, Simmons's observations may have been innocuous, we hold that, taken together, they satisfy the "low threshold" of reasonable suspicion, which requires "'considerably less than proof of wrongdoing by a preponderance of the evidence . . . .'" Rudolph v. Commonwealth, 277 Va. 209, 213, __ S.E.2d __, __ (Lemons, J., dissenting) (quoting Sokolow, 490 U.S. at 7), cert. denied, 130 S. Ct. 738 (2009).

Sanchez points to McCain and Rudolph, in support of his contention that Gagnon lacked reasonable suspicion to believe he was engaged in criminal activity.[4] Though we do not find

---

[3] After Gagnon stopped Sanchez's vehicle, he asked for permission to search both Sanchez's person and his vehicle. Sanchez agreed. Simmons arrived on scene while Gagnon was searching the vehicle. Simmons approached Sanchez and asked for permission to search his person. Again, Sanchez agreed. Sanchez then "hung his head" and handed Simmons a small plastic baggie, which he clutched in his fist, containing .46 gram of cocaine. Sanchez was then placed under arrest and charged with possession of cocaine.

[4] Sanchez also points to Ross v. Commonwealth, 35 Va. App. 103, 542 S.E.2d 819 (2001), for the proposition that "the mere observation of a hand-to-hand transaction taking place in an area known for drug activity, without more, [is] not sufficient to create reasonable suspicion." (Appellant's Br. at 9). This is a misstatement of Ross and its holding. The

either McCain or Rudolph to be controlling of the issue before this Court on appeal, an examination of these cases is helpful to our analysis. In McCain, an officer in a high crime area observed a vehicle, containing two occupants, parked on the street in front of a house. 275 Va. at 550, 659 S.E.2d at 514. The officer watched the two occupants walk up to the house and, in less than a minute, return to the vehicle. Id. The officer was familiar with this particular house because he was involved in a controlled buy at that location *months earlier*. Id. The officer stopped the vehicle for a minor traffic violation. Id. McCain was a passenger. Id. Another officer arrived and conducted a pat-down search of McCain against his wishes and discovered a weapon. Id. at 551, 659 S.E.2d at 515. In reversing McCain's convictions, the Supreme Court of Virginia held that:

> McCain's brief presence at a house the officer associated with drug activity *months prior* does not support a reasonable inference of criminal activity. The record does not contain any evidence concerning the purpose of McCain's visit or *any suspicious behavior during the visit*. A person's Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a "high crime" area. Despite the neighborhood, the activity Worsham observed on Sublett's Alley was not sufficient to stop McCain because of a reasonable suspicion of criminal activity.

Id. at 553, 659 S.E.2d at 516 (emphasis added).

In Rudolph, an officer was patrolling a shopping center that had been the subject of a number of burglaries and robberies. 277 Va. at 209, __ S.E.2d at __. The officer observed a vehicle parked in the rear of a gas station "located on an outparcel of the shopping center." Id. The officer believed the vehicle's location was unusual since there were a number of unoccupied, marked parking spaces on that side of the station. Id. The vehicle had two

---

dispositive issue in Ross was whether the officer had probable cause to arrest the defendant. In fact, both parties agreed in Ross that the officer possessed reasonable suspicion to stop the defendant. However, because the officer's search of the defendant exceeded the scope of Terry, this Court concluded that it had to be supported by probable cause. Id. at 106 n.1, 542 S.E.2d at 820 n.1.

occupants who, according to the officer, were "moving around in the vehicle" and "appeared to be looking or reaching for something." Id. at 210, __ S.E.2d at __. At that point, the officer decided to "make sure everything was fine." Id. As the officer approached to investigate, the vehicle drove away. The officer stopped the vehicle and discovered that Rudolph was the driver. During the stop, the officer recovered marijuana "at the center floor divider where Rudolph's right leg had been." Id. Again, the Supreme Court of Virginia vacated Rudolph's conviction, holding that the officer lacked reasonable suspicion to believe that criminal activity was afoot. Id. at 211, __ S.E.2d at __. The Supreme Court explained:

> Viewing the totality of the circumstances objectively, even though it was 8:00 p.m. and there had been robberies and burglaries in the area, the circumstances did not supply a particularized and objective basis to suspect that Rudolph's observed behavior was a precursor to a break-in, robbery, or any other criminal activity on his part.

Id.

We find the facts of McCain and Rudolph easily distinguishable from the facts of this case. In contrast to McCain, Simmons observed Sanchez sitting in front of a house associated with *recent* drug activity. As both Simmons and Gagnon testified, the Danville Police Department had conducted numerous raids on the house, one of which occurred just a week earlier. In addition, Simmons observed Sanchez engage in what appeared to be a hand-to-hand drug transaction in the front yard of the residence. Unlike in McCain and Rudolph, Simmons's observations supplied him with "a particularized and objective basis to suspect that [Sanchez's] observed behavior was a precursor to . . . criminal activity . . . ." Id.

Sanchez also points to Kidd v. Commonwealth, 38 Va. App. 433, 565 S.E.2d 337 (2002), in support of his argument. In Kidd, an officer observed Kidd engage in a number of hand-to-hand transactions on the street. Id. at 440, 565 S.E.2d at 340. Though the officer was unable to identify the items exchanged, he believed he had witnessed a possible drug transaction

and radioed for backup.  Id.  "Approximately five seconds later," the officer's backup arrived, and together they approached Kidd to investigate.  Id.  As the officers approached, they observed "over hundreds" of shell casings and empty shotgun shells on the ground "near where Kidd was standing."  Id. at 440, 565 S.E.2d at 340-41.  In addition, one of the officers observed Kidd hand an unidentified man a "large wad of money."  Id. at 441, 565 S.E.2d at 341.  Ultimately, the officers detained Kidd and frisked him for weapons, discovering 36 individual baggies of cocaine.  Id.  This Court affirmed Kidd's conviction, holding that the officers had reasonable suspicion to believe Kidd was engaged in criminal activity.  Id. at 443, 565 S.E.2d at 342.

> Here, it is clear that Officer Cary had sufficient reasonable suspicion that criminal activity was afoot to support a lawful detention of Kidd.  Moreover, contrary to Kidd's argument, *the fact that Hannah did not see and could not identify the items that were exchanged in the hand-to-hand transactions he observed, does not preclude a finding of reasonable suspicion under these circumstances*.

Id. (emphasis added).

Essentially, Sanchez argues from the negative, asserting that because this Court found that reasonable suspicion existed in Kidd and because the circumstances of this case do not rise to the level of Kidd, reasonable suspicion did not exist in this case.  However, contrary to Sanchez's contention, Kidd did not establish a bright-line rule or minimum threshold for the existence of reasonable suspicion.  As the United States Supreme Court has observed, "the reasonable-suspicion determination is such a multi-faceted, fact-intensive inquiry, '*one determination will seldom be a useful precedent for another*.'"  McCoy, 513 F.3d at 412 n.4 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)) (emphasis added).  Thus, each case

must be assessed on its own facts, and in this case, we hold that the stop of Sanchez was supported by reasonable suspicion.

<u>Affirmed.</u>